UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADRIAN M. L., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 22 C 5972 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adrian M. L. seeks to overturn the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. The Commissioner moves for summary judgment affirming the decision. For the following reasons, the Court affirms the ALJ's decision.

## BACKGROUND

Adrian applied for DIB on May 14, 2020, alleging that he became disabled on March 6, 2020 due to allergies, facial fractures, traumatic brain injury, and brachial plexopathy of the right arm. Adrian is also mildly obese. Born on June 9, 1977, Adrian was 42 years old as of the alleged disability onset date. On March 6, 2020, Adrian was involved in a motor vehicle accident in which he rear ended a semi-truck, and the airbag did not deploy. Adrian sustained fractures of two ribs, C5, right orbital bone and right brachial plexus. As a result, Adrian has no functional use of his right upper extremity. Adrian is right-handed and has past work experience as a machine operator and car porter.

The administrative law judge ("ALJ") issued her decision denying Adrian's application on December 22, 2021. (R. 24-33). The ALJ concluded that Adrian's brachial plexus injury and peripheral neuropathy were severe impairments but did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 27-28. The ALJ found Adrian's allergies, facial fractures, and traumatic brain injury to be non-severe. *Id*. at 27. The ALJ then determined that Adrian had the residual functional capacity ("RFC") to perform light work except that he: (1) is unable to lift, carry, push, pull, reach, handle, finger, or feel with his dominant right upper extremity; (2) is never able to climb ladders, ropes, or scaffolds or crawl; (3) must avoid work around hazards, such as unprotected heights and dangerous moving machinery; and (4) is limited to no work with vibrating tools or work surfaces. *Id*. at 28-33. Given this RFC and the testimony of the vocational expert ("VE"), the ALJ concluded that Adrian is unable to perform his past relevant work as a machine operator and porter, but there are jobs that exist in significant numbers in the national economy that Adrian can perform, including counter clerk, usher, and host. *Id*. at 31-33. The ALJ therefore found Adrian not disabled. *Id*. at 33.

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5)

2

whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ---, 139 S.Ct. 1148, 1154, (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Adrian presents two arguments in support of reversal. Adrian contends that the ALJ erred in disregarding the VE's testimony that work would not exist for an individual with the same limitations stated in the ALJ's RFC findings who was primarily a Spanish speaker. Adrian also argues that the ALJ erred in failing to incorporate his diplopia (double vision) into the hypothetical question to the VE. The Court finds that the ALJ's decision is supported by substantial evidence and there are no errors warranting reversal.

3

A.	**Ability to Communicate in English**

Adrian first argues that the ALJ erred by disregarding the VE's testimony that an individual who is primarily a Spanish speaker could not perform the service jobs of counter clerk and usher. In response, the Commissioner argues that changes in the SSA's regulation in 2020 removed the inability to communicate in English as a relevant factor for the "education" component to be considered at step five. At step five, the Commissioner has the burden to "demonstrat[e] that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022). The ALJ must consider a claimant's RFC, age, education, and work experience to determine whether there are a significant number of jobs in the national economy that a claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ considered these factors and based on the VE's testimony concluded that Adrian was capable of performing the jobs of counter clerk, usher, and host.

Under the applicable regulation in effect at the time of the ALJ's decision here, the ALJ did not err by failing to consider Adrian's ability to communicate in English at step five. Effective April 27, 2020, a new rule governs how the Commissioner evaluates the vocational factor of education.[1] *See Removing Inability to Communicate in English as an Education Category*, 85 FR 10586 (Feb. 25, 2020) (available at 2020 WL 885690). As a result, the agency "no longer consider[s] whether an individual is able to communicate in English at the fifth and final step of the sequential evaluation process (step 5)." *Id*. at 10587. The agency also promulgated Social Security Ruling 20-01p, which explains that "[w]hen determining the appropriate education category, [the agency] will not consider whether an individual attained his or her education in

---

[1] The revised regulation applies to all cases decided on or after the effective date of April 27, 2020, which includes this case decided on December 22, 2021. 85 FR 10586, 10587, 10596, 10600-01 n.95 (Feb. 25, 2020) (the new regulation applies "to new applications filed on or after the effective date, and to claims that are pending on or after the effective date.").

another country or whether the individual lacks English language proficiency." 85 FR 13692, 13694 (Mar. 9, 2020) (available at 2020 WL 1083309); *id*. at 13693 n.8 ("We no longer have an education category of 'inability to communicate in English' as of April 27, 2020."). The revision was based on the agency's finding that English proficiency "is no longer a useful indicator of an individual's educational attainment or of the vocational impact of an individual's education because of changes in the national workforce since [it] adopted the current rule more than 40 years ago." 85 FR 10586 (Feb. 25, 2020). Although no court in the Seventh Circuit appears to have applied the revised regulation, district courts in other jurisdictions have held that effective April 27, 2020, an ALJ is not required to consider a claimant's English proficiency in considering his educational level at step five. *Hashim v. Comm'r of Soc. Sec. Admin.*, 2023 WL 4566539, at *10-12 (N.D. Tex. June 29, 2023); *Pichardo v. Comm'r of Soc. Sec.*, 2023 WL 2596970, at *19-20 (S.D. N.Y. Mar. 22, 2023); *Sofia T. v. Comm'r of Soc. Sec.*, 2023 WL 2424072, at *2-3 (W.D. Wash. Mar. 9, 2023).[2]

    The ALJ found that Adrian has a "limited education" under the applicable regulation, which means "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3). At step five, the ALJ noted that "[a]lthough the vocational expert testified that the claimant would not be able to perform the above jobs if the claimant were primarily a Spanish speaker, new developments in the regulations indicate that the claimant's ability to communicate in English is no longer considered for the purpose of assessing

---

[2] *See also Torres v. Comm'r of Soc. Sec.*, 2023 WL 2299311, at *11 n.2 (D. P.R. Feb. 28, 2023); *Golshan D. v. Kijakazi*, 2023 WL 1823520, at *5 (D. Utah. Jan. 23, 2023); *Vang v. Comm'r of Soc. Sec.*, 2022 WL 17812859, at *6 (E.D. Ca. Dec. 19, 2022); *Juan R. v. Kijakazi*, 2022 WL 3018056, at *4 (C.D. Cal. July 29, 2022); *Gina C. v. Comm'r of Soc. Sec.*, 2022 WL 167922, at *11 (D. Conn. Jan. 18, 2022).

the claimant's highest level of education." (R. 32). As correctly noted by the ALJ, under the regulation applicable at the time of the ALJ's decision on December 22, 2021, the ALJ was not required to assess Adrian's ability to communicate in English as part of the education category Accordingly, the Court finds no reversible error in the ALJ's failure to rely on the VE's testimony that work did not exist for an individual who is primarily a Spanish speaker. *See* 85 FR 10586, 10596 ("When the final rule takes effect, we will not consider whether an individual can communicate in English at any step of the sequential evaluation process. Thus, if claimants or their representatives raise the issue of the inability to communicate in English in a hypothetical question posed to a vocational expert during a hearing, we will find it to be out of scope for the purposes of determining disability."). Because the revised rule applicable to Adrian's claim eliminated consideration of his ability to communicate in English, Adrian's first argument fails.

Adrian contends, however, that the case of *Marisol M. v. Comm'r of Soc. Sec.*, 2022 WL 2357413 (D. N.J. June 29, 2022), requires reversal. In *Marisol M.*, the district court reversed the ALJ's decision holding that it was not harmless for the ALJ to fail to include the claimant's illiteracy in English in the hypothetical question posed to the VE. At the time the ALJ issued her decision in *Marisol M.*, the prior regulation applied. *Id*. at * n.9 (noting that "[a]t the time the ALJ rendered her decision, 20 C.F.R. § 404.1564(b) specifically referenced English language abilities as opposed to fluency in other languages as relevant to an assessment of a claimant's education."). In contrast, under the revised regulation in effect at the time of the ALJ's decision here, the Commissioner is no longer required to consider a claimant's ability to communicate in English when evaluating his educational level at step five. Because the revised regulation eliminated the inability to communicate in English from the agency's consideration at step five, the instant action is distinguishable from *Marisol M*.

In sum, Adrian has not shown that the ALJ's decision fails to comply with the regulation applicable at the time of the decision. Nor has he cited any authority requiring an ALJ to include English proficiency limitations in an RFC or hypothetical to the VE under the current regulation. *Vang*, 2022 WL 17812859, at *6 ("Plaintiff has cited no authority requiring an ALJ to address English proficiency limitations in an RFC assessment or a VE hypothetical under the current regulatory scheme" and "recent agency guidance suggests that such a consideration would be inappropriate."). Accordingly, the ALJ properly concluded that Adrian's ability to communicate in English is no longer considered for the purpose of assessing his highest level of education, and remand is not required on this issue.

**B.      Visual Limitations**

Adrian also criticizes the ALJ for failing to account for his diplopia (double vision) in her hypothetical question. "An ALJ must include in his hypothetical question all of a claimant's limitations supported by the medical record." *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022) (internal citation and quotations omitted). "[W]hen considering the appropriateness of a hypothetical question posed to a vocational expert, '[a]ll that is required is that the hypothetical question be supported by the medical evidence in the record.'" *Cass v. Shalala*, 8 F.3d 552, 555–56 (7th Cir. 1993)) (internal citation omitted). The burden was on Adrian to "prove []he is disabled by producing medical evidence." *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021).

On March 19, 2021, Adrian presented to Dr. Matthew Plofsky, a primary care physician, complaining of "some double vision, when looking" right with an onset a few weeks earlier, but "mostly better." (R. 852). Adrian's neurological and eye exams were normal. *Id*. at 853. Dr. Plofsky referred Adrian to a neurologist for further evaluation of his diplopia. *Id*. On April 2, 2021, Adrian saw Dr. John H. Pula, a neurologist at NorthShore University Health System's neuro-

ophthalmology clinic. *Id*. at 839-50.  Adrian complained of diplopia with an onset of three to four months prior. *Id*. at 840.  Adrian also reported that when he moved his tongue, he could feel a sensation in his right orbit *Id*.  Upon neurological exam, Dr. Pula noted "[b]inocular diplopia in far lateral gaze subjectively." *Id*. at 845.  Dr. Pula's exam showed "no ocular misalignment/no measurable diplopia." *Id*.  Dr. Pula explained that the sensation Adrian felt around his right orbit when he moved his tongue was "logically an aberrant regeneration of the cranial nerves." *Id*. at 840.  Dr. Pula concluded that there was no neurologic cause for Adrian's diplopia, and he recommended that Adrian follow up with his general eye doctor for evaluation and management recommendations of diplopia. *Id*. at 840, 846.  There are no further records regarding Adrian's diplopia.

Adrian does not identify any evidence that his diplopia impacts his RFC, and thus, the ALJ was not required to include it in her hypothetical question.  Adrian's diplopia condition alone does not establish disability, and Adrian had to prove that particular restrictions arose from his diplopia. *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was [claimant's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."); *McGillem v. Kijakazi*, 2022 WL 385175, at *4 (7th Cir. 2022) ("Medical evidence supports the existence of the condition, but the need for restrictions cannot be inferred from the diagnosis alone.").  Adrian ignores Dr. Pula's finding of "no measurable diplopia" and fails to cite any medical opinion or evidence to show that his diplopia caused any specific functional limitations. *Gedatus*, 994 F.3d at 905.  Nor does Adrian demonstrate that his diplopia would impede his ability to perform the counter clerk, usher, and host jobs that the ALJ found him capable of performing.  Because the record lacked medical evidence of visual

limitations, the absence of such limitations in the hypothetical does not support remanding this case.

## CONCLUSION

For the reasons stated above, Adrian's request for reversal with or without remand [15] is denied, and the Commissioner's Motion for Summary Judgment [23] is granted.

**SO ORDERED.**

Dated: February 16, 2024

Sunil R. Harjani
United States Magistrate Judge